**Henry Sheldon WEBB, Appellant,**

v.

**Arresting Officers, Omaha Police Department, Emil J. HIYKEL, Dennis Dutton, Russell L. Lewis, Kirk Stanzel, Thomas A. Zoucha, as individuals and in their capacities as City of Omaha Police Officers, Appellees.**

No. 82–2250.

United States Court of Appeals,
Eighth Circuit.

Submitted May 19, 1983.

Decided Aug. 8, 1983.

Rehearing Denied Sept. 9, 1983.

---

Dan L. McCord, of the Law Firm of Healey, Brown, Wieland, Kluender, McCord, Atwood & Jacobs, Lincoln, Neb., for appellant.

James E. Fellows, Deputy City Atty., Thomas O. Mumgaard, Asst. City Atty., Omaha, Neb., for appellees.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

Plaintiff-Appellant Henry Sheldon Webb, an inmate at the Nebraska State Penitentiary, brought this action under 42 U.S.C. section 1983 alleging a violation of his constitutional rights by certain officers of the Omaha Police Department. Judgment was entered in favor of each defendant following a court trial. Webb now seeks appellate review of the lower court's decision. For reasons set out more fully herein, we vacate the judgment and remand the cause to the district court for a determination of damages.

I.

Omaha, Nebraska, police officers arrested Webb in the early morning hours of May 13, 1980, in connection with a robbery which took place at the Omaha Airport Inn motel a few hours earlier. Officer Russell L. Lewis stopped the automobile that Webb was driving and arrested Webb and four others. The suspects were then transported to police headquarters in downtown Omaha.

After Webb's arrest he was involved in a series of three altercations with the arresting officers. Each incident will be described separately.

A. Booking Room Incident.

The first altercation, the booking room incident, occurred when Officer Thomas A. Zoucha allegedly "planted" evidence on Webb. Zoucha had transported Webb from the scene of the arrest to the station. Webb claims he attempted to attract the attention of other officers to prevent Zoucha from planting the evidence on him. The officers claim Webb was wildly waving his arms during this episode and that Webb hit Zoucha and grabbed his pocket while Zoucha attempted to perform a search. Force was used to restrain Webb at this point. The trial court found the episode was of brief duration and did not involve force that was unnecessary, given the circumstances, to control Webb.

B. Lineup Room Incident.

Detective Emil Hiykel ordered that Webb and two or three other suspects participate in a lineup to aid the robbery witnesses in identification of the culprit. Officers Kirk Stanzel, Lewis, and Zoucha were in charge of the suspects during the lineup.

During the lineup one of the victims requested that Webb don a cowboy hat as the culprit had worn such a hat during the robbery. Webb wore the hat briefly. He then took the hat from his head and, according to the officers, attempted to destroy it. William Smith, one of the victims viewing the lineup, related that the officers put the hat on Webb pursuant to his request and that Webb knocked the hat off his head whenever it was put there. According to Smith, a scuffle between Webb and the officers began when Webb shoved the officer trying to put the hat on his head.

Webb's version of this altercation differed greatly. Webb claimed he wore the

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

hat for a while and then decided to take it off; that when he did so, the officers began to strike, beat, and kick him, even though he offered no resistance. DeWitt Wade, another robbery suspect, related a version of the incident substantially similar to Webb's.

The trial court again found that the force employed to restrain Webb did not involve the beating and kicking Webb claimed. The court found that Webb did not receive injuries during the lineup altercation as a result of more force than necessary to restrain his behavior.

### C. Cell Area Incident.

Following the lineup, Officer DiMauro, the jail commander, directed Officers Stanzel and Distefano (not a party herein) to take Webb to a cell. During the brief trip from the lineup room to the cell area, Webb claims a third altercation took place involving as many as five or six officers. Webb claims he was dragged to his cell; that the officers dropped him on the concrete hallway floor from three feet above it and hit him; and that there were racial slurs made against him, indicating a racial animus against him by the officers.

Two witnesses for the plaintiff, Michael Christiansen and Richard Beedle, both testified they saw Webb dragged along the hallway. Beedle saw officers stepping on Webb's foot as Webb was dragged to his cell. Christiansen saw Webb kicked by the officers. Both witnesses heard a continual exchange of racial slurs during the incident. Witnesses Beedle and Christiansen were in jail at the time of the altercation and viewed the incident through a slot in their cell doors.

The trial court found the defendant officers justified the use of some force during the cell area incident. Left unexplained, however, was the testimony that the officers dropped Webb, stepped on his foot, and kicked and hit him. The trial court found that there was force applied beyond that necessary to restrain Webb while he was taken to the cell area. While Stanzel was present at all times during this incident, the

identity of the officers who applied such force was not demonstrated to the trial court's satisfaction.

### D. Injuries.

Webb claimed that he suffered severe injuries as a result of the altercations at the jail—severe pain in the groin, a lacerated right ankle, and a severe pain in his back. He received medical care at the Lutheran Medical Center for these complaints in the early afternoon of May 13, 1980; at the St. Joseph Medical Center emergency room early in the morning of May 15, 1980; and was admitted to the Veterans Hospital on May 15, 1980. Webb left the Veterans Hospital against doctor's advice on May 19, 1980.

Defendants introduced evidence at trial tending to demonstrate that the injuries Webb attributed to them were at least in part existing prior to the altercations at the police station. Dr. James K. Styner, an orthopedic surgeon, testified concerning the extent and likely source of Webb's back injuries. Dr. Styner estimated that Webb's disability was five to ten percent. Dr. Styner was unaware of Webb's previous back injury.

### II.

For reversal Webb argues that the district court erred in its application of the law regarding joint tortfeasors in civil rights actions. Webb asserts that the findings of fact show that Officer Stanzel accompanied him from the lineup room to the cell area and was present while Webb was subjected to unnecessary force. According to Webb, the evidence clearly shows Stanzel breached his duty to intervene and prevent Webb's summary punishment. Appellees respond that Webb did not present this theory of recovery to the trial court and cannot recover on this theory.

We agree with Webb and accordingly vacate the district court judgment and remand the cause to the trial court for a determination of damages. It is well settled that the "theory of the pleadings" doc-

trine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the Federal Rules of Civil Procedure. *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 714 (8th Cir.1979) (*citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* section 1219 at 141–143). *See also Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974). *Cf. Armstrong Cork Co. v. Lyons,* 366 F.2d 206, 209 n. 3 (8th Cir.1966) (Plaintiff cannot try his case on one theory and then, after finding himself unable to prove it, shift to another).

■ Under Fed.R.Civ.P. 54(c), except in the case of default, the "final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." As noted in C. Wright & A. Miller, *supra,* "(t)he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, * * *" provided that such a shift does not work to the prejudice of the opposing party. *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d at 714.

■ Our review of the evidence and the findings of fact persuade us that Webb is entitled to relief. Stanzel accompanied Webb from the lineup room to his cell. If Stanzel did not subject Webb to unnecessary force, he was nonetheless under a duty to prevent the use of such force, even if the officers beating Webb were his superiors. *Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir.1981) *citing Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir.1972).

Furthermore, Webb's recovery under this theory will not unduly prejudice the defendants. The record shows Webb presented the duty to intervene theory with regard to other defendants. They cannot now claim prejudice due to application of this theory to another defendant (Stanzel). This is especially true in a case where several unknown officers subject a plaintiff to unnecessary force. Finally, the allegations of the pleadings were sufficiently broad to notify defendant Stanzel that he could be held responsible for acting "in concert" with other policemen who may have physically beaten plaintiff Webb.

### III.

Conclusion.

Because we find that the trial court should have held Stanzel liable based upon his failure to intervene, we need not consider appellant's other assignments of error. The judgment of the district court is vacated and the cause remanded for a determination of damages against defendant Stanzel.