William RUSSELL, Plaintiff,

v.

**TOWN OF CHESAPEAKE,**
**et al., Defendants.**

Civ. A. No. 2:92–0740.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 30, 1993.

James M. Pierson, Andrew R. Pauley, Pierson Legal Services, Charleston, WV, for plaintiff.

W. Randolph Fife, Steptoe & Johnson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Town of Chesapeake's Motion for Summary Judgment made pursuant to Rule 56, Fed.R.Civ.P. Having carefully considered the parties' submissions, the Court concludes there is no genuine issue of material fact and the Town is entitled to judgment as a matter of law. For reasons which follow the Court will grant the Town's motion for summary judgment.

William Russell brought this action pursuant to the provisions of 42 U.S.C. § 1983, alleging the Town of Chesapeake is liable for violations of his civil rights by one of its police officers, Timothy Johnson.[1] Plaintiff asserts the police officer, chasing Plaintiff without warrant or probable cause, tackled and body slammed Plaintiff directly into the pavement of the street, pulled, shoved and cuffed the Plaintiff, placed his knees and full weight of his body on Plaintiff's back, and verbally assaulted and physically abused Plaintiff. Officer Johnson arrested Plaintiff for public intoxication. Russell claims he suffered a broken foot, soft tissue damage to his knees and numerous abrasions during the encounter.

The parties do not dispute the police officer was acting in the scope of his employment with the Town when he arrested Plaintiff. Neither is there any factual conflict material to resolution of this motion concerning the occurrences during Plaintiff's arrest. But the Town argues Plaintiff has failed to

---

1. Officer Johnson is also named as a Defendant in this suit.

establish a basis for its liability, and the Court should therefore award it summary judgment.

Under Rule 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principle purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden to show the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). But once the moving party has met this initial burden, the burden shifts to the non-moving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden, the non-moving party cannot rely on its pleadings, but instead must present evidence showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

The Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In resolving this question, the Court must view the evidence in the light most favorable to Plaintiff. *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992).

■ The law governing § 1983 actions against municipalities is clear.[2] A municipality can be found liable under § 1983 only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ..." *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). While municipal "policy" is most commonly found where municipal ordinances or regulations command or authorize constitutional violations, "it may also be found in formal or informal *ad hoc* "policy" choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

■ There are limited circumstances in which an allegation of a "failure to train" an employee can be the basis for § 1983 liability. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). The issue in such a case is whether the allegedly deficient training program is adequate; "and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. The Supreme Court in *City of Canton* described the circumstances in which a "failure to train" could constitute the "policy" of a municipality:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper train-

2. Plaintiff did not explicate in his complaint a specific basis for the Town's liability. He alleged only that the police officer was a "duly appointed, employed, and acting policeman of the Town of Chesapeake" who acted "under the color and pretense of the statutes, ordinances, regulations, customs, and usages" of the Town when he arrested Plaintiff.

In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. Liability under § 1983 will not attach under the doctrines of *respondeat superior* or vicarious liability. *Id.* Plaintiff's undisputed allegation that the police officer acted within the scope of his employment by the Town when he arrested Plaintiff will not by itself suffice to establish the Town's liability.

ing may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*City of Canton,* 489 U.S. at 390–91, 109 S.Ct. at 1205–06 (footnotes omitted).

■ Municipal liability under § 1983 may also be established where constitutional violations are visited pursuant to a governmental "custom" even though the custom has not received formal approval by the municipality. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. The existence of such a "custom" may be found in persistent and widespread practices of municipal officials which, although not authorized by written law, are so permanent and well-settled as to have the force of law. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Spell,* 824 F.2d at 1386.

■ Applying these principles to the instant case, the Court must examine whether summary judgment for the Town is proper, viewing the evidence as favorably as possible for the Plaintiff. Because the Town would not bear the burden of proof at trial, it may discharge its initial burden if it can demonstrate there is an absence of evidence to support the Plaintiff's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553.

The Town asserts Plaintiff has produced no evidence to establish a municipal policy or custom that would affix liability under § 1983. Citing Plaintiff's answers to interrogatories, the Town argues there is no evidence of other incidents of unlawful arrest or excessive force on the part of Chesapeake police. Moreover, the Town cites portions of the depositions of its Mayor Damon Bradshaw and Officer Timothy Johnson detailing the Town's training requirements for police officers. The Town establishes, through citations to the depositions, that at the time he arrested Plaintiff, the officer had received two months of on-the-job instruction from another Chesapeake police officer, completed thirteen weeks of law enforcement education and training at the West Virginia Police Academy, and attended regular in-service training seminars.

Viewed in context of the standard for municipal liability under § 1983 set forth in *City of Canton,* the Town's evidence demonstrates a conspicuous lack of support for Plaintiff's allegation of municipal liability. The Court finds the Town discharged its initial burden of producing evidence showing no genuine dispute exists as to any material fact. The Court must determine next whether Plaintiff has shown the existence of a material fact dispute.

Plaintiff enumerates 14 points in opposition which he asserts demonstrate "a clear pattern of deliberate indifference on behalf of the Town of Chesapeake." He alleges because the police chief is Timothy Johnson's uncle, the Town's ability to investigate possible misconduct by Johnson was "necessarily skewed." In support of this proposition, Plaintiff cites a portion of Timothy Johnson's deposition establishing only that Johnson's uncle is indeed Chesapeake's chief of police.[3] Without evidence showing the Town's allegedly "skewed" ability to investigate resulting from this relationship, Plaintiff's assertion is merely conclusory, and does not establish a genuine issue of material fact.

In an apparent attempt to demonstrate a pattern of constitutional violations by Chesapeake police officers, Plaintiff asserts that another Chesapeake police officer, Mark March, was charged with malicious wounding in an incident which occurred in his line of duty as a Chesapeake policeman. Plaintiff cites as authority for this allegation a portion of Timothy Johnson's deposition; there, Johnson states March was found not guilty of the charge after a jury trial. Plaintiff submits no further evidence showing the exis-

---

**3.** Plaintiff fails to note that nine pages after the portion of Johnson's deposition he cites, Johnson revealed his uncle was not police chief at the time of Plaintiff's arrest, and did not assume the post until later.

tence, nature or resolution of charges against Mark March.

■■■ It is notable that Plaintiff's evidence suggests only the existence of a charge against March—not a conviction. Nonetheless, even if Plaintiff had demonstrated March's conviction of the charge, that fact alone would not establish the existence of a genuine issue of material fact. Evidence of one prior incident of excessive force by a Chesapeake police officer by itself would not establish the pattern of "persistent and widespread" constitutional violations necessary to demonstrate a "custom." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Neither would a single incident show that the need for further training of Chesapeake police officers was so plainly obvious that city policymakers were "deliberately indifferent." *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10. A single act or isolated incidents of the use of excessive force by a police officer does not establish an official custom or policy of a municipality. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821–24, 105 S.Ct. 2427, 2435–37, 85 L.Ed.2d 791 (1985); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983).

■■■ Plaintiff asserts further that a witness to Plaintiff's arrest, Christine Stanley, gave a written statement to the Town of Chesapeake, and that the mayor told her that he would investigate the incident.[4] Plaintiff later cites a response by the Town to an interrogatory showing the municipality conducted no investigation of the circumstances surrounding Plaintiff's arrest.[5] Even so, failure to investigate the incident falls far short of establishing a pattern of comparable practices sufficient to demonstrate a policy resulting from condoned custom. It is true

that an official policy can be inferred from a municipality's omissions as well as from its acts. *Wellington*, 717 F.2d at 935. But such omissions are actionable only if they constitute "tacit authorization" of or "deliberate indifference" to constitutional injuries. *Id.* at 936. A municipal policy of condoning police misconduct can be inferred where the municipality has been grossly negligent in the supervision and training of its police force. *Id.* But a failure to supervise gives rise to § 1983 liability only in situations where there is a history of widespread abuse. *Id.* Just as a single violation will not support the inference that the violation resulted from a municipal "policy" of deficient training, *Tuttle*, 471 U.S. at 821–24, 105 S.Ct. at 2435–37, it cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices. *Spell*, 824 F.2d at 1391; *Wellington*, 717 F.2d at 936. Even viewed in the manner most favorable to Plaintiff, this evidence does not demonstrate the existence of a genuinely disputed material fact.

Plaintiff alleges as well that the Town's deliberate indifference toward constitutional violations is evident from its lack of a clear policy on internal investigations, its lack of a "procedure book" for use by its police officers, and its failure to issue directives to police officers concerning the use of excessive force. Plaintiff, however, does not demonstrate how these factors constituted the "moving force [behind] the constitutional violation" he allegedly suffered. *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205.

Without a history of excessive force violations by its police officers, Town officials reasonably could not have anticipated a need for special instruction and training of officers

---

4. Plaintiff cites no affidavit detailing the nature or content of Christine Stanley's "written statement." He cites only the deposition of Mayor Damon Bradshaw, who stated he received a letter from "some lady" who "didn't like what she saw or something like that." Viewing this evidence as favorably as possible to Plaintiff, the Court assumes the lady to whom Mr. Bradshaw referred was Christine Stanley, and that Ms. Stanley witnessed Plaintiff's arrest and filed a statement with the Town stating she felt Officer Johnson had used excessive force when he arrested Plaintiff.

5. The parties apparently disagree about how the Town answered this interrogatory. The question asked whether the police department investigated "the incident with Timothy Johnson and Plaintiff." The Town avers in its reply brief the answer stated Chesapeake's police chief investigated the incident. But in the copy of the Town's answers to Plaintiff's interrogatories Plaintiff attached to its response, the Town simply answered the question: "No." For purposes of this motion, the Court views the evidence in the light most favorable to Plaintiff, and assumes the answer Plaintiff cites is correct.

on proper use of force. The Town relied on the West Virginia Police Academy for its officers' training; Plaintiff has demonstrated no basis for the Town to believe the training its officers received at the Academy required supplementation. Any need for additional training certainly was not "so obvious ... and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 389, 109 S.Ct. at 1205. None of Plaintiff's allegations in this regard demonstrate a genuine dispute of material fact.

■ The test of municipal liability under § 1983 is a most stringent one. *Revene v. Charles County Comm'rs,* 882 F.2d 870, 874 (4th Cir.1989). Plaintiff has failed to adduce any evidence establishing that a policy or custom of the Town directly resulted in the constitutional violation he allegedly suffered. Because Plaintiff has failed to establish a basis for municipal liability under § 1983, there are no triable issues against the Town of Chesapeake. Accordingly, the Court **GRANTS** the Town's motion for summary judgment.