**Dennis Joseph BROWNING, Plaintiff,**

v.

**Steven SNEAD, et al., Defendants.**

**Civ. A. No. 2:94–0440.**

United States District Court,
S.D. West Virginia,
Charleston Division.

May 17, 1995.

Jacqueline A. Hallinan, Charleston, WV, for plaintiff.

W. Christopher Wickham and Charles R. Bailey, Shuman, Annand & Poe, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is defendant City of Man's motion to dismiss defendant Steven Snead, and the motions for summary judgment filed by defendants Mark Spurlock, Travis Grimmett and the Logan County Commission and by defendants Benny Adkins and the City of Man. Plaintiff has responded to the motions and the defendants have replied. The motions are ripe for adjudication.

As an initial matter, the motion to dismiss defendant Snead must be granted. Snead has not been served with the complaint as required by Rule 4 of the *Federal Rules of Civil Procedure.* The Court previously permitted the Plaintiff an extension of time to serve Snead, but service has not been accomplished. Therefore, the motion to dismiss defendant Snead is **GRANTED.**

The remaining defendants seek summary judgment against the Plaintiff. The standard used to determine whether a motion for summary judgment should be granted or denied was stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Proc. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2514]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* [498 U.S. 1109] 111 S.Ct. 1018 [112 L.Ed.2d 1100] (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130

L.Ed.2d 24, *and cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). Thus, the evidence must be evaluated in a light most favorable to the nonmoving party, the Plaintiff.

## I.

This action arises from the arrest of Plaintiff on June 4, 1992 by two City of Man, West Virginia police officers. Defendants Snead and Benny Adkins arrested Plaintiff for driving under the influence of alcohol. The facts surrounding the police officers' conduct during the arrest are in dispute.

Attached to Plaintiff's response to the motion for summary judgment filed by Adkins and the City of Man is the deposition of Rosemary White. Mrs. White stated she was visiting the home of Plaintiff's mother, Mary Brown, the night of the incident. White deposition at 13. She stated Plaintiff was also at his mother's home that evening. *Id.* at 15. When Plaintiff later left his mother's home he did not have a valid operator's driver's license and he was driving his father's unlicensed, unregistered pick-up truck. *Id.* at 26. Plaintiff's mother asked Mrs. White to join her in following Plaintiff because she was worried about the lack of registration and licensing, and both were concerned because Plaintiff had been drinking. *Id.*

Plaintiff's mother drove Mrs. White until they saw the pick-up truck in front of them. *Id.* at 27. They observed a police car pull the pick-up truck over. *Id.* Mrs. White then observed Officers Snead and Adkins exit the police car. *Id.* at 36. Only Officer Snead approached the vehicle. *Id.* at 41. Officer Snead then hand-cuffed the Plaintiff while Plaintiff was still in the pick-up truck. *Id.* at 44. Officer Snead then jerked Plaintiff out of the truck and slammed him to the ground. *Id.* at 44–45. Mrs. White contends Officer Snead then kicked the Plaintiff several times at different points on his body. *Id.* at 45. Officer Snead jerked Plaintiff up from the ground, pushed him to the passenger side of the police car and shoved him into the

back seat of the cruiser. *Id.* As Snead shoved Plaintiff into the cruiser, Plaintiff hit his head on the top of the cruiser. *Id.* According to Mrs. White, the Plaintiff did not resist Officer Snead at any time.[1] *Id.* at 46.

Defendants Adkins and the City of Man argue there is no evidence Adkins knew of or saw Plaintiff being physically abused even if such abuse occurred. Mrs. White testified in her deposition that Officer Adkins "just stood there and watched," and "[h]e just stood there and he didn't try to stop this man or nothing." White deposition at 48. Mrs. White testified Officer Adkins went into the truck while the alleged mistreatment of the Plaintiff was occurring, but taking her testimony in a light most favorable to the Plaintiff, the Court must conclude there is evidence Officer Adkins watched the alleged abuse take place and did nothing to stop it.

Subsequent to his arrest, Plaintiff was taken by Adkins and Snead to the Logan County Jail. Plaintiff apparently remembers little of his processing at the jail because of his level of intoxication but admits he refused to take a breath test to determine the level of alcohol in his blood. He asserts when he awoke the following morning he noticed bruises on his left arm and right leg, and a knot on his head. He claims he felt severe pain in his ribs, although he had no visible bruises there. He claims other prisoners and several guards told him he looked "rough."

Plaintiff asserts he asked two different jail employees for permission to see a doctor on separate occasions during the five days he was in the jail. He claims those jail employees responded he could not see a doctor because the doctor only came to the jail one or two days a week. He states he asked jail employees to provide him with aspirin or Tylenol at different times during his incarceration and those requests were granted.

After he was detained in the Logan County Jail for five days, his mother sought his transfer to a state hospital pursuant to a mental hygiene petition. In his memoran-

---

1. Defendants argue the deposition of Mrs. White is inaccurate. But this Court must construe the facts in a light most favorable to the non-moving party, the Plaintiff, and presume the credibility of this evidence for summary judgment purposes. *Shaw v. Stroud, supra,* 13 F.3d at 798.

dum in response to the County defendants motion for summary judgment, Plaintiff suggests the purpose of the mental hygiene petition was to provide Plaintiff with medical treatment he was not receiving in the jail. Plaintiff stated in his deposition, however, that the purpose of the petition was to get treatment for his alcoholism.

While hospitalized plaintiff began suffering vision problems in his left eye. The doctor at the state hospital prescribed eye drops, but when the condition worsened he was referred to an eye doctor. Eventually, Plaintiff was diagnosed with a detached retina and underwent unsuccessful surgery to reattach the retina.

## II.

The Court must examine whether the defendants are protected from suit by the doctrine of qualified immunity. In *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994) our Court of Appeals discussed generally the application of qualified immunity as follows:

"Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.' *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992) (*citing Tarantino v. Baker,* 825 F.2d 772, 774–75 (4th Cir.1987), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989)), *cert. denied,* — U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation,

the official is entitled to qualified immunity. *Tarantino,* 825 F.2d at 775."

*See Reynolds v. Hale,* 855 F.Supp. 147, 149 (S.D.W.Va.1994) (Haden, C.J.).

■ The test for determining whether qualified immunity is available for a particular defendant is an "objectively reasonable" one. *Shaw v. Stroud,* 13 F.3d at 801. Describing application of the "objectively reasonable" qualified immunity test to actions of police officers, our Court of Appeals has observed:

"[O]fficers are entitled to qualified immunity when they rely on standard operating procedures, if that reliance is reasonable. *Vizbaras v. Prieber,* 761 F.2d 1013, 1015 (4th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud, supra,* 13 F.3d at 801.

*See Gooden v. Howard County, Maryland,* 954 F.2d 960, 965 (4th Cir.1992) ("[T]he basic purpose of qualified immunity ... is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (qualified immunity necessary because 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.').");  *Reynolds v. Hale,* 855 F.Supp. at 149 (" 'The very idea of reasonableness requires that courts accord interpretative latitude to official judgments.' *Torchinsky [v. Siwinski ],* 942 F.2d [257,] 261 [ (4th Cir.1991). '[T]he determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made ... in light of any exigencies of time and circumstance that reasonably may

have affected the officer's perceptions.' *Pritchett v. Alford,* 973 F.2d [at] 313[.]").

■ The "express purpose" of the test of objective reasonableness is to accord "police officers latitude in exercising what are inescapably discretionary functions replete with close judgment calls." *Gooden v. Howard County, Maryland,* 954 F.2d at 964. Thus, the test has been described as a "highly deferential" one. *Rainey v. Conerly,* 973 F.2d 321, 324 (4th Cir.1992), and "[t]he immunity is to be applied with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight." *Gooden v. Howard County, Maryland,* 954 F.2d at 964–65.

### A.

■ Defendants Adkins and the City of Man first argue the claims against them should be dismissed because, even if the conduct of Officers Snead and Adkins is proved to a jury, Plaintiff has presented evidence of *de minimis* injuries only. They contend evidence of *de minimis* injuries in a case alleging excessive use of police force is insufficient to show a constitutional violation.

Even if the *de minimis* standard applies to Fourth Amendment claims, however, Plaintiff has submitted evidence from which a jury could reasonably infer he suffered a detached retina as a result of the incident.[2] *Shaw v. Stroud, supra,* 13 F.3d at 798, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party."). Therefore, because Plaintiff has submitted evidence he sustained a serious injury during the incident, defendants' motion for summary judgment based upon the seriousness of the injuries sustained by the Plaintiff is **DENIED.**

■ Defendants next argue Officer Adkins is entitled to qualified immunity because he did not see the alleged abuse of the

Plaintiff and therefore had no opportunity to intervene on Plaintiff's behalf. A police officer may not stand by idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf. *Thompson v. Boggs,* 33 F.3d 847, 857 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2nd Cir.1988); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."); *Webb v. Hiykel,* 713 F.2d 405, 408 (8th Cir.1983); *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983) ("Acts of omission [by a law enforcement officer] are actionable ... to the same extent as are acts of commission."); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976); *Byrd v. Brishke,* 466 F.2d 6, 10–11 (7th Cir.1972); *Thomas v. Frederick,* 766 F.Supp. 540, 555 (W.D.La. 1991); *Mathis v. Parks,* 741 F.Supp. 567, 573 (E.D.N.C.1990). *Cf., Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir.1987) (police officer has duty to intercede on behalf of citizen when bail bondsman uses excessive force). As noted above, Plaintiff has adduced deposition testimony to the effect Officer Adkins watched the incident and did nothing to prevent it. Clearly, this issue presents a question of material fact precluding summary judgment. Defendant's motion for summary judgment on this issue is therefore **DENIED.**

■ Defendants also contend Plaintiff has failed to produce sufficient evidence showing a violation of his rights by the City of Man. Plaintiff has alleged the customs and policies of the City caused the violations of his constitutional rights. Theories of *respondeat superior* and vicarious liability are inapplicable in claims under 42 U.S.C. § 1983; a municipality may not assume liability under § 1983 for the acts of its employees unless the municipality or its officials are

---

**2.** Defendants contend the retinal injury to Plaintiff's eye was not caused by the alleged conduct of the Officer Snead. This is a question of material fact precluding summary judgment.

shown to have caused the alleged constitutional deprivation pursuant to the establishment of some policy or custom by the municipality or its officials. *Monell v. New York Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). *Accord Gordon v. Kidd,* 971 F.2d 1087, 1097 (4th Cir.1992); *Buffington v. Baltimore County, Md.,* 913 F.2d 113, 122 (4th Cir. 1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216, and *cert. denied sub nom., Gaigalas v. Buffington,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991); *Spell v. McDaniel,* 824 F.2d 1380, 1389 (4th Cir. 1987), *cert. denied sub nom., City of Fayetteville, N.C. v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) ("Two basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy itself 'unconstitutional.' The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mistrained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example."); *Wellington v. Daniels,* 717 F.2d 932, 935 (4th Cir.1983); *Avery v. Burke County,* 660 F.2d 111, 114 (4th Cir.1981).

This Court addressed when a municipality may be held liable in an action brought under § 1983 for violations of constitutional rights pursuant to municipal custom or policy in *Russell v. Town of Chesapeake,* 817 F.Supp. 38, 40–41 (S.D.W.Va.1993) (Haden, C.J.):

"The law governing § 1983 actions against municipalities is clear. A municipality can be found liable under § 1983 only where the 'execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ...' *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). While municipal 'policy' is most commonly found where munici-

pal ordinances or regulations command or authorize constitutional violations, 'it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.' *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

"There are limited circumstances in which an allegation of a 'failure to train' an employee can be the basis for § 1983 liability. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). The issue in such a case is whether the allegedly deficient training program is adequate; 'and if it is not, the question is whether such inadequate training can justifiably be said to represent "city policy."' *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. The Supreme Court in *City of Canton* described the circumstances in which a 'failure to train' could constitute the 'policy' of a municipality:

[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*City of Canton,* 489 U.S. at 390–91, 109 S.Ct. at 1205–06 (footnotes omitted).

"Municipal liability under § 1983 may also be established where constitutional vi-

olations are visited pursuant to a governmental 'custom' even though the custom has not received formal approval by the municipality. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. The existence of such a 'custom' may be found in persistent and widespread practices of municipal officials which, although not authorized by written law, are so permanent and well-settled as to have the force of law. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Spell,* 824 F.2d at 1386." (footnote omitted).

In response to defendants' argument on this issue, Plaintiff makes bald assertions of the City's indifference to constitutional rights through its hiring practices and insufficient training and supervision of police officers. Plaintiff makes no reference to evidence that supports his contentions. His opposition to defendants' motion rests upon mere allegations. Such allegations are insufficient to withstand the motion for summary judgment in regard to the City of Man's custom's and policies. "The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id."* *Shaw v. Stroud,* 13 F.3d at 798. Summary judgment must be **GRANTED** in favor of the City of Man.

■ Similarly, the Plaintiff has asserted several state law claims, including "assault and battery, intentional infliction of emotional distress, outrageous conduct, invasion of privacy,[3] negligence, gross negligence, and negligent hiring, retention and supervision." Complaint at ¶ 32. Defendants contend Plaintiff has produced no evidence to support his state law claims. Plaintiff responds by suggesting, "[t]he pleadings, with the affidavits, considered in a light most favorable to the non-moving party, show that there are genuine issue [*sic*] as to material facts." Plaintiff's Response to Adkins and the City of Man's motion for summary judgment at 7–8.

■ Plaintiff asserts genuine issues of material fact are extant, but curiously fails to attach any affidavit or deposition that support his claims. His defense to the summary judgment motion can not rest on mere allegations. *Shaw v. Stroud, supra.* Therefore, because Plaintiff has failed to do more than assert bald allegations of state law violations, those state law claims will be dismissed and summary judgment on those issues will be **GRANTED** in favor of defendants.

**B.**

■ Count II of Plaintiff's complaint alleges a failure on the part of defendants Travis Grimmett, in his official capacity as Logan County Sheriff, Mark Spurlock, in his official capacity as President of the Logan County Commission and the Logan County Commission itself (the "County defendants"), to provide appropriate medical treatment to the Plaintiff while he was incarcerated in the Logan County Jail. Those defendants move for summary judgment asserting the material facts are undisputed and they are entitled to judgment as a matter of law.

■ Whether an inmate is a pretrial detainee or a convicted criminal dictates what provision of the Constitution governs the standard of medical care to be provided to the inmate. Where, as here, the inmate is a pretrial detainee, the standard of care is governed by the due process clause of the Fourteenth Amendment rather than by the prohibition against cruel and unusual punishment found in the Eighth Amendment. *Hill v. Nicodemus,* 979 F.2d 987, 990 (4th Cir. 1992). *Accord Gray v. Farley,* 13 F.3d 142, 146 (4th Cir.1993).

■ Plaintiff asserts he is not required to show the defendants acted with deliberate indifference to his serious medical needs. For support, he cites a 1984 decision of the Court of Appeals for the Seventh Circuit, *Matzker v. Herr,* 748 F.2d 1142 (7th Cir. 1984). Plaintiff's citation is unavailing. The Seventh Circuit has more recently adopted the "deliberate indifference" standard. *Sala-*

**3.** Plaintiff's claim for invasion of privacy was dismissed as time-barred in this Court's Novem-

ber, 1994, Memorandum Opinion and Order.

zar v. City of Chicago, 940 F.2d 233, 240 (7th Cir.1991), citing Archie v. City of Racine, 847 F.2d 1211 (7th Cir.1988) (en banc), Martin v. Tyson, 845 F.2d 1451 (7th Cir.1988) and Duckworth v. Franzen, 780 F.2d 645 (7th Cir.1985). In this Circuit moreover, to prove a claim of failure to provide medical care under § 1983, a pretrial detainee is required to prove the officials involved exhibited a deliberate indifference to the detainee's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Gray v. Farley, 13 F.3d at 146; Hill v. Nicodemus, 979 F.2d at 991, citing Gordon v. Kidd, supra; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990); Goff v. Bechtold, 632 F.Supp. 697, 698 (S.D.W.Va.1986) (Haden, C.J.) ("[The] test is two-pronged. First, it requires deliberate indifference on the part of prison officials. Second, the injury or illness of the prisoner must be serious. Hence, a prisoner cannot state a constitutional claim if he has only minor medical needs. Neither can he state a claim if his needs are inadvertently neglected." (citations and footnote omitted)).

For an act or omission to rise to the level of deliberate indifference, it "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness [and] may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d at 851, citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir.1986), and Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985). Moreover, "[a] defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id.

The Court concludes the Plaintiff has not made a case for inadequate medical care sufficiently under § 1983. His only "serious medical need" appears to have been treatment for his detached retina. He readily admits this condition did not become obvious to him until after he had been removed from the jail pursuant to his family's mental hygiene petition. Thus, there was no way defendants could or should have been aware of his need for treatment, if in fact treatment was needed at that time. Therefore, the motion for summary judgment made by defendants Grimmett, Spurlock and the Logan County Commission is **GRANTED.**[4]

### III.

Based upon the foregoing, defendant Adkins motion for summary judgment is **DENIED**; the motions for summary judgment by all other defendants are **GRANTED.**

---

4. Plaintiff cites generally to the pleadings and depositions of witnesses to support his opposition to the defendants' motion in regard to his state law claims. The Court is not directed to any specific deposition or pleading, let alone any specific portion thereof. Nothing in the record before the Court supports Plaintiff's state law claims; therefore, summary judgment on those claims is likewise **GRANTED.**