**Mary E. REYNOLDS, Plaintiff,**

v.

**Kevin HALE, J.W. Richards, Oval Adams, W.E. Hunter, Hassell Butcher and The County Commission of Logan County, West Virginia, Defendants.**

**Civ. A. No. 2:92–0707.**

United States District Court, S.D. West Virginia, Charleston Division.

June 16, 1994.

**148**

Mike Kelly, Charleston, WV, for plaintiff.

Charles R. Bailey, Shuman, Annand & Poe, W. Randolph Fife, Steptoe & Johnson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This action was referred to the Honorable Jerry D. Hogg, United States Magistrate Judge, who submitted his proposed findings of fact and recommendation for disposition pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Following entry of this report-recommendation the Plaintiff filed objections.

After a *de novo* review of these objections, the Court partially adopts the Magistrate's report-recommendation. Accordingly, the Court 1) **DENIES** Plaintiff's motion for partial summary judgment; 2) **GRANTS** Defendants' motion for summary judgment, with respect to whether Oval Adams, J.W. Richards, Kevin Hale, or W.E. Hunter violated Plaintiff's Fourth Amendment rights by authorizing and conducting a search without probable cause; and 3) **GRANTS** partial summary judgment in favor of Hassell Butcher and the County Commission, with respect to whether these Defendants are liable for constitutional violations under 42 U.S.C. § 1983. The rulings on other claims follow.

On July 25, 1991, a warrant-based search of Plaintiff's home was undertaken by Logan County deputy sheriffs. The search was based on information drugs were being sold from this location.

Ms. Reynolds was not present when the drug search commenced, but appeared shortly thereafter. She arrived walking the road adjacent to her home and began protesting loudly to officers.[1] Ms. Reynolds was told to keep off the property or face arrest "for interfering with an officer." Following this warning, she remained off the property but continued her protests to Deputy Sheriff Hale. Deputy Hale then arrested the Plaintiff, and in the course of subduing her threw her to the ground and fractured her hip. Ms. Reynolds later was charged with obstructing an officer by a complaint sworn to by Defendant Hunter. This charge was ultimately dismissed by the State.

## I. *FEDERAL CLAIMS*

In paragraph twenty-three of the complaint, Plaintiff alleges Defendants Hale and Hunter violated her Fourth Amendment rights by arresting her without probable cause and intentionally causing a criminal "warrant" to issue against her on the basis of a false statement.[2] The Defendants claim

---

1. The Court has carefully reviewed the videotape submitted by the parties.

2. Following the criminal complaint filed by Defendant Hunter, a criminal *summons* was issued against the Plaintiff rather than a criminal warrant.

the arrest for obstruction was reasonable, asserting the following:

"Considering the information learned from the drug investigation, the general reputation of the Cora Bottom area as a crack alley, the boisterous, unruly and defiant behavior of the plaintiff, the fact that Officer Hale had to block the plaintiff from coming onto the search premises and the fact that he had to back her away from the area, a reasonable officer standing in Officer Hale's shoes would have concluded that the plaintiff's behavior was distracting the officers and obstructing them from carrying out their responsibilities during the drug raid. Officer Hale was attempting to ensure the safety of his fellow officers and the plaintiff proposed [sic] a potential threat, both personally and through the distraction she was creating. The plaintiff wore a loose fitting t-shirt and, considering that the officers had been warned of firearms, it was not unreasonable to consider the possibility of the plaintiff having a concealed weapon...."[3]

In response Plaintiff asserts she obeyed directives to stay off her property, that she never threatened or attempted to physically harm arresting officers, and that prior to the arrest no adults other than law enforcement personnel, her husband, and herself were observed in the area.[4] With twelve to fourteen armed deputies participating in the raid, the Plaintiff claims no "obstruction" occurred. The Plaintiff also notes that officers "felt secure enough" to momentarily turn away from her, and claims the arrest occurred only because she *verbally* provoked the Defendants.[5]

■ The first issue is whether Defendants Hale and Hunter enjoy qualified immunity from the Plaintiff's Fourth Amendment claim that she was arrested without probable cause. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Under this doctrine, "a plaintiff may prove that an official has violated his rights, but an official is nonetheless entitled to qualified immunity if a reasonable person in the officials position could have failed to appreciate that his conduct would violate' those rights." *Torchinsky v. Siwinski,* 942 F.2d 257, 261 (4th Cir.1991). Thus qualified immunity "affords government officials greater protection than a simple defense on the merits." *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir. 1991).

"The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Torchinsky,* 942 F.2d at 261. "[T]he determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made ... in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir.1992).

Applying the *Harlow* analysis, the Court must first determine whether Defendants Hale and Hunter violated any clearly established statutory or constitutional rights belonging to Mary Reynolds.

The constitutional rights in this case arise from the Fourth and First Amendments. The Fourth Amendment requires probable cause for an arrest. Probable cause under the Fourth Amendment "means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the

---

**3.** See page twenty of the memorandum in support of motion for summary judgment filed by Defendants Hale and Hunter. Deposition testimony basically supports these assertions. See Hale deposition, pp. 8–11, 17–20, 36, 39–41, 45–46, 67–68, 70, 72; Hunter deposition, pp. 16, 17, 23, 24, 25, 30, 31; Richards deposition, pp. 19–20, 23–25, 37, 46.

**4.** See videotape and Hale deposition, pp. 31–32, 45–46, 61; Hunter deposition, p. 26.

**5.** See videotape.

suspect has committed, is committing, or is about to commit an offense.'" *Pritchett,* 973 F.2d at 314 (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)).

The charging statute is clearly relevant in determining whether there is probable cause for an arrest. W.Va.Code § 61–5–17 provides that "[a]ny person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose ... any officer in this state (whether civil or military) in the lawful exercise or discharge of his official duty [shall be guilty of an offense against the State]."

Because of First Amendment implications, courts have limited the application of similar statutes involving obstruction of justice. In *City of Houston, Texas v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), Raymond Hill was arrested pursuant to a municipal ordinance making it unlawful to interrupt a police officer in the performance of his or her duties.[6] The arrest arose from Hill's attempt to distract officers by shouting at them during a traffic stop. The Supreme Court ruled the pertinent ordinance unconstitutionally overbroad under the First Amendment, noting the following:

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. 'Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *Id.* at 461, 107 S.Ct. at 2509 (citation omitted).

In *State ex rel. Wilmoth v. Gustke,* 179 W.Va. 771, 373 S.E.2d 484 (1988), the court applied the *Hill* decision in the context of W.Va.Code § 61–5–17. In *Gustke* a police officer attempted to issue a traffic citation in a shopping center parking lot. While the officer was issuing the citation, the petitioner approached the scene and asked the officer to issue the citation elsewhere. The petitioner was ultimately arrested for obstruction.

The *Gustke* court noted "that when done in an orderly manner, merely questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute the offense of obstructing an officer." *Id.* at 773, 373 S.E.2d at 486. Applying the *Hill* decision, the Court held W.Va.Code § 61–5–17 unconstitutional as applied:

"Under the facts of this case, the application of W.Va.Code § 61–5–17 [1931] is violative of the petitioner's first amendment rights. Clearly, under *Hill,* every person has a first amendment right to question or challenge the authority of a police officer, provided that fighting words or other opprobious language is not used. Accordingly, a person, upon witnessing a police officer issuing a traffic citation to a third party on the person's property, who asks the officer, without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance, to leave the premises, does not violate *W.Va.Code,* 61–5–17 [1931], because the person has not illegally hindered an officer of this State in the lawful exercise of his or her duty. To hold otherwise would create first amendment implications which may violate the person's right to freedom of speech." *Id.* at 774, 373 S.E.2d at 487.

Applying *Gustke, Hill,* and W.Va.Code § 61–5–17 to the instant case, the Plaintiff arguably was arrested without probable cause. The videotape and Kevin Hale's deposition suggest that Ms. Reynolds presented no physical threat to the officers. The verbal protests precipitating her arrest were arguably protected by the First Amendment rights enunciated in *Gustke* and *Hill.*

Conversely, however, the evidence also demonstrates that Ms. Reynolds wanted to enter her property during the execution of a valid search warrant. In order to insure she

---

**6.** The pertinent ordinance provided that "'[i]t shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest.'" *Id.* at 455, 107 S.Ct. at 2506 (citation omitted).

remained on the adjacent road, the officers had to watch her while also securing the area. Throughout these events the Plaintiff projected a vocal, hostile presence. The effects of this distraction were intensified further by the hazards of a drug raid being conducted in a "crack alley," where potentially armed criminal suspects were involved.

Based on the dangerous exigencies incident to Plaintiff's arrest and the broad language of W.Va.Code § 61–5–17, the Court concludes a reasonable officer could have determined he had probable cause to arrest the Plaintiff for obstruction. The arrests in *Gustke* and *Hill* occurred in the context of a traffic stop. The instant arrest occurred during a potentially life threatening drug raid. Officers needed to secure a dangerous area quickly, and the Plaintiff's openly hostile presence arguably "hindered" these efforts. As stated in *Pritchett*, "the determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made … in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions."

The Court concludes Defendants Hale and Hunter are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim that she was arrested without probable cause, and on the related claim Defendants caused a criminal "warrant" to issue against her on the basis of a false statement.

## II. STATE CLAIMS

■ The next issue is whether the Court should retain supplemental jurisdiction over state claims involving assault and battery, false arrest and imprisonment, malicious prosecution, and negligence.

In *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the United States Supreme Court addressed the concept of supplemental/pendent jurisdiction:

"[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are

'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'

[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* at 349–350, 108 S.Ct. at 618–19.

The common law doctrine of pendent jurisdiction has effectively been subsumed by the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section 1367(a) provides as follows:

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Applying *Cohill* and section 1367, the Court notes that pending state claims arise from the same drug search giving rise to the Fourth Amendment excessive force claim, which remains viable for trial. Because state claims form part of the same case or controversy as the excessive force federal claim, and each allegation is derived from "a common nucleus of operative fact," the Court concludes it should exercise supplemental jurisdiction.

Accordingly the Court **DENIES** Hassell Butcher and the County Commission's motion for summary judgment regarding their liability for damages due to Defendants' negligence under state tort law.

The Court also **DENIES** Hale's motion for summary judgment on the state claim for assault and battery, and **DENIES** Hale and

Hunter's motion for summary judgment on the claim for false arrest and imprisonment. Genuine factual questions exist on these issues, and Defendants have failed to demonstrate the right to judgment as a matter of law.

The Court **GRANTS** summary judgment regarding Plaintiff's claim for malicious prosecution. In *Morton v. Chesapeake and Ohio Ry. Co.*, 184 W.Va. 64, 399 S.E.2d 464 (1990), the court set forth the elements of such a claim:

> " '[The] plaintiff must show: (1) that the prosecution was set on foot and *conducted to its termination*, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.' " *Id.* at 67, 399 S.E.2d at 467 (emphasis added) (citation omitted).

As noted, the State dismissed the obstruction charge following Plaintiff's arrest. Because the charge was not pursued beyond the criminal complaint and summons, it was not "conducted to its termination." Accordingly the claim for malicious prosecution must be dismissed.

The parties will be put to trial with respect to the following claims: 1) whether Hale violated Plaintiff's Fourth Amendment rights by using excessive force; 2) whether Hale committed an assault and battery under state law; 3) whether Hale and Hunter committed acts constituting false arrest and imprisonment under state law; and 4) whether Butcher and the County Commission are liable to Plaintiff for damages arising from alleged negligence by the Defendants, who were their agents and servants.

The Clerk is directed to send a copy of this Order to counsel of record.