**Charles JORDAN and Linda Jordan, Plaintiffs,**

v.

**The TOWN OF PRATT, et al., Defendant.**

**No. 2:94–0682.**

United States District Court,
S.D. West Virginia,
Charleston Division.

May 24, 1995.

---

Richard J. Lindroth, South Charleston, WV, for plaintiffs.

W. Randolph Fife, Steptoe & Johnson, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the Defendants' motion for summary judgment. Plaintiffs have responded and Defendants have replied. This case is ripe for adjudication.

Plaintiffs filed their complaint in the Circuit Court of Kanawha County. The Defendants then removed the matter to this Court pursuant to 28 U.S.C. § 1441(b) (1991). Plaintiffs' complaint may be divided into two parts: (a) the claims of Charles Jordan arising from his allegations of false arrest, and (b) the claims of Linda Jordan arising from an alleged violation of her right to privacy by defendant Williams' communication of her daughter's sexual assault.

## I.

Charles Jordan contends Mark March, a police officer for the Town of Pratt, West Virginia, violated his civil rights by arresting him June 21, 1993 on a charge of impersonating a police officer. Complaint at ¶ XXV. He contends he "was employed as [sic] by the Air National Guard ... to function as a military police officer one weekend per month, two weeks of the year and any other occasions when [he] was on active duty, and [he] served as a police/security guard for the Adjutant General of West Virginia the remainder of [his] employment." Affidavit of Charles Jordan at ¶ 2. He asserts March and defendant Williams came to his home on June 19, 1993 in response to a complaint concerning a neighbor's dog. Complaint at ¶ VII. Mr. Jordan contends March inquired where he was employed, and when informed Jordan was employed by the Air National Guard, March began "rudely interrogating"

him, accused him of lying, and unsuccessfully attempted to take his badge. *Id.* at ¶ IX. Mr. Jordan further contends March informed him he was going to check his credentials as a police officer and if he determined they were not legitimate, he would return and arrest Jordan. *Id.* at ¶ X. Mr. Jordan asserts March telephoned a Lieutenant Colonel Johnson of the Air National Guard to determine whether Jordan was a police officer and Johnson informed March that Jordan was a police officer. *Id.* at XIII.

Mr. Jordan contends that despite knowing Jordan was a police officer, Officer March, with the approval of Chief of Police Williams, swore out a false complaint and warrant for Jordan's arrest on a charge of impersonating a police officer. *Id.* at XIV. Thereafter, Officer March arrested Jordan. Jordan spent approximately four hours in custody. The charge was dropped six weeks later.

## II.

The Court must examine whether defendants are protected from suit by the doctrine of qualified immunity. In *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994) our Court of Appeals discussed generally the application of qualified immunity as follows:

"Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.' *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992) *(citing Tarantino v. Baker,* 825 F.2d 772, 774–75 (4th Cir.1987), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1117, 103

L.Ed.2d 180 (1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Tarantino,* 825 F.2d at 775."

*See Reynolds v. Hale,* 855 F.Supp. 147, 149 (S.D.W.Va.1994) (Haden, C.J.).

■ The test for determining whether qualified immunity is available for a particular defendant is an objectively reasonable one. *Shaw v. Stroud,* 13 F.3d 791, 801 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). Describing application of the "objectively reasonable" qualified immunity test to actions of police officers, our Court of Appeals has observed:

"[O]fficers are entitled to qualified immunity when they rely on standard operating procedures, if that reliance is reasonable. *Vizbaras v. Prieber,* 761 F.2d 1013, 1015 (4th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud, supra,* 13 F.3d at 801.

*See Gooden v. Howard County, Maryland,* 954 F.2d 960, 965 (4th Cir.1992) ("[T]he basic purpose of qualified immunity ... is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (qualified immunity necessary because 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.').")*; Reynolds v. Hale,* 855 F.Supp. at 149 (" 'The very idea of reasonableness requires that courts accord interpretative latitude to official judg-

ments.' *Torchinsky* [*v. Siwinski*], 942 F.2d [257,] 261 [ (4th Cir.1991). '[T]he determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made ... in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions.' *Pritchett v. Alford,* 973 F.2d [at] 313[.]"). *Accord, Browning v. Snead,* 886 F.Supp. 547, 551 (S.D.W.Va.1995) (Haden, C.J.).

■ The express purpose of the test of objective reasonableness is to accord "police officers latitude in exercising what are inescapably discretionary functions replete with close judgment calls." *Gooden v. Howard County, Maryland,* 954 F.2d at 964. Thus, the test has been described as a "highly deferential" one, *Rainey v. Conerly,* 973 F.2d 321, 324 (4th Cir.1992), and "[t]he immunity is to be applied with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight." *Gooden v. Howard County, Maryland,* 954 F.2d at 964–65. Moreover, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir.1992). Nonetheless, as stated by the Court of Appeals in *Pritchett, supra,*

> "This does not mean ... that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment. Here, as in any context, summary judgment for the movant is appropriate only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as a matter of law. As indicated, the narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of

law for the court, hence is always capable of decision at the summary judgment stage. Whether the conduct allegedly violative of the right actually occurred or, if so, whether a reasonable officer would have known that the conduct would violate the right, however, may or may not be then subject to determination as a matter of law. If there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial." (citations omitted). *Id.*

The Court thus turns to the evidence presented by the Plaintiffs to determine whether a question of material fact has been presented precluding summary judgment.

## III.

As a narrow threshold question it is not clear the "right allegedly violated was clearly established ... at the time of the challenged conduct[.]" *See Pritchett, supra,* 973 F.2d at 313. The right in issue is the Fourth Amendment right "not to be arrested except upon probable cause to believe" Jordan had violated West Virginia's law against impersonating a law enforcement officer pursuant to *W.V.Code* § 61–1–9 (1990). *Id.* at 313–14. In order to defeat the motion for summary judgment, Jordan bears the burden of presenting sufficient evidence supporting his contention he was arrested without probable cause. In *Pritchett, supra,* the Court of Appeals thoroughly addressed what may constitute probable cause in given situation:

> " 'Probable cause,' for Fourth Amendment purposes, means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' *Michigan v. De Filippio,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979).[1]

1. *Accord, Wilkes v. Young,* 28 F.3d 1362 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995) ("Probable cause only requires enough evidence 'to warrant a man of reasonable caution in the belief that' an 'offense has been or is being committed.' " (citations omitted)).

"Whether probable cause exists in a particular situation therefore always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct. *See Sevigny* [*v. Dicksey,*] 846 F.2d [953,] 956 [ (4th Cir. 1988) ]. Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both. *See id.* at 958–59 (legal misapprehension of statute's coverage). In consequence, a court's determination whether a constitutional right not to be arrested under particular circumstances was 'clearly established' requires identification both of the facts known to the arresting officer and the contours of the criminal offense asserted as the justification for the arrest. The right may then be found 'clearly established,' hence violated, at this level of factual particularity if probable cause is lacking on either or both the factual knowledge or legal understanding components of the equation. *See id.* at 956." *Id.*

The question for the Court is whether the facts known to the arresting officer and the contours of the criminal offense asserted [justified] the arrest. Turning first to the contours of the criminal offense, *W.Va.Code* § 61–1–9 states:

"**§ 61–1–9. Impersonation of law-enforcement officer or official; penalty.**

"Any person who shall falsely represent himself or herself to be a law-enforcement officer or law-enforcement official or to be under the order or direction of any such person, or any person not a law-enforcement officer or law-enforcement official who shall wear the uniform prescribed for such persons, or the badge or other insignia adopted for use by such persons with the intent to deceive another person, is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars.

"For the purposes of this section, the term[ ] law-enforcement officer ... shall be defined by ... [§ 30–29–1], except that such term[ ] shall not include members of the division of public safety and shall not include individuals hired by nonpublic entities for the provision of security services."

*W.Va.Code* § 30–29–1 (1992), defines the term "law-enforcement officer":

" 'Law-enforcement officer' means any duly authorized member of a law enforcement agency who is authorized to maintain public peace and order, prevent and detect crime, make arrests, and enforce the laws of the state or any county or municipality thereof[.]"

█ The offense contours are thus straightforward: whenever one falsely represents himself to be a law enforcement officer with the intent to deceive another, that person has violated the statute. The parties dispute whether Jordan's particular employment met the definition of law enforcement officer.

Jordan contends he was clearly a law enforcement officer under the statute because he was commissioned as a police officer for the adjutant general of West Virginia. He cites *W.Va.Code* § 15–1B–22 (1987) which authorizes members of the West Virginia National Guard to be designated as security guards by the adjutant general. Security guards so designated are "deemed to have met all the requirements for certification as a law enforcement officer set forth in [§ 30–29–5]." *Id.* The designated security guards who have completed an authorized training program are given police-like powers on the military institutions where they are stationed. *Id.* Among those police powers are the powers to make arrests for violations of state or federal law occurring on military institutions, to cooperate with state and local authorities investigating or apprehending persons believed to have committed federal, state or municipal offenses on military institutions, and to make complaints and swear out warrants for persons believed to have committed crimes on military institutions. *Id.*

█ Defendants argue, in essence, that Jordan's position as security guard with the West Virginia National Guard does not qualify as a law enforcement officer for the pur-

poses of *W.Va.Code* § 61–1–9. The legal question for the Court is whether it was clearly established at the time of the incident that a security guard with the West Virginia National Guard qualifies as a law enforcement officer for the purposes of *W.Va.Code* § 61–1–9. *Pritchett, supra,* 973 F.2d at 313, *citing Sevigny v. Dicksey,* 846 F.2d 953, 956 (4th Cir.1988).

The Court notes the Supreme Court of Appeals of West Virginia has not had occasion to address this issue. It is not incumbent for this Court to determine definitively whether adjutant general security guards are the law enforcement officers referred to in § 61–1–9 because it appears, even if they are, such was not clearly established or known at the time of Mr. Jordan's arrest. Although security guards exercise police-like powers, their geographical jurisdiction is limited to the institutions and reservations they are assigned to guard and protect. Moreover, although they are "deemed to have met all the requirements for certification as a law enforcement officer," they are not deemed to be law enforcement officers as that term is used in *W.Va.Code* § 61–1–9. Their status appears to be more accurately described as that of quasi-law enforcement officers. Therefore, the Court concludes the law was not *clearly* established that Mr. Jordan's employment as an adjutant general's security guard constituted employment as a law enforcement officer, as that term is used in § 61–1–9.

Defendants have presented evidence Officer March received a complaint from a neighbor of Mr. Jordan who asserted Mr. Jordan had represented himself to be a police officer with authority in the Town of Pratt. Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit H (Affidavit of Jared Thompson).[2] Although Jordan challenges the some of the facts asserted by the neighbor,[3] it is undisputed Officer March relied upon those facts in seeking a warrant for the arrest. Based upon those facts known to Officer March, the Court concludes a prudent police officer of reasonable caution could de-termine appropriately Mr. Jordan was in violation of the statute. The complaint information supports a finding of probable cause to make the arrest.

Because the Court determines probable cause existed to make the arrest, Defendants' motion for summary judgment on Mr. Jordan's § 1983 claim is **GRANTED.**

■ Mr. Jordan has asserted several ancillary state law claims in regard to his arrest, including battery, false imprisonment, defamation, malicious prosecution and false arrest. Complaint at ¶¶ XXXI–XXXII. Defendants contend Mr. Jordan has produced no evidence to support his state law claims. Plaintiffs assert genuine issues of material fact are extant, but curiously fail to attach any affidavit or deposition to support those claims. A defense to the summary judgment motion can not rest on mere allegations. *Shaw v. Stroud, supra.* Because Mr. Jordan failed to do more than assert bald allegations of state law violations, those state law claims will be dismissed and summary judgment on those issues will be **GRANTED** in favor of Defendants.

### IV.

■ Mrs. Jordan has asserted a claim of invasion of privacy under West Virginia state law. She contends, "[a]s a result of his position as Chief of Police, Defendant Williams came into information regarding the sexual assault of the daughter of the Plaintiff," Complaint at ¶ XXXV, and he "intentionally and negligently failed to keep this information confidential as required by state law and the dictates of his position, and did communicate the same in order to embarrass Plaintiff[.]" Defendants contend Mrs. Jordan has not established sufficiently an invasion of privacy claim. The Court agrees.

■ West Virginia recognizes a cause of action for invasion of privacy. *Syllabus* Point 2, *Cordle v. General Hugh Mercer Corp.,* 174 W.Va. 321, 325 S.E.2d 111 (1984). "The right of privacy, including the right of

---

**2.** Mr. Thompson's affidavit states, "I complained to the members of the police department of the Town of Pratt about the fact that the plaintiff had represented himself as a police officer and 'flashed' his badge while instructing me to chain the dog[.]"

**3.** Jordan admits he told the neighbor he was a police officer and showed the neighbor his badge upon the neighbor's request to see it, but denies he asserted he had any authority outside a military institution.

an individual to be let alone and to keep secret his private communications, conversations and affairs, is a right the unwarranted invasion or violation of which gives rise to a common law right of action for damages." *Syllabus* Point 1, *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958). *Accord, Cordle, supra*, 174 W.Va. at 327, 325 S.E.2d at 116. In West Virginia, a claim for invasion of privacy may be maintained as follows: "An 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Syllabus* Point 8, *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983).[4] Apparently, Mrs. Jordan is asserting Chief Williams actions were unreasonable publicity given to another's private life.

By her deposition testimony Mrs. Jordan stated Chief Williams told his daughter of the assault incident involving Mrs. Jordan's daughter in order to ascertain whether his own daughter had been similarly victimized. According to Mrs. Jordan, Chief Williams was concerned for his daughter because the two girls were playmates. Significantly, Mrs. Jordan stated she could understand Chief Williams concern. Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit G. In such a situation, it is apparent to the Court Chief Williams conversation with his daughter was not unreasonable, although perhaps a poor exercise in judgment. Therefore, defendants' motion for summary judgment in regard to Mrs. Jordan's invasion of privacy claim is **GRANTED.**

### V.

Based upon the foregoing, Defendants' motion for summary judgment is **GRANTED,** and this action is dismissed.

---

4. Moreover, "[t]he 'right of privacy' does not extend to communications which are privileged under the law of defamation; which concern public figures or matters of legitimate public interest; or which have been consented to by the plaintiff." *Syllabus* Point 9, *Crump, supra.*