John Russell **KRIDER**, Plaintiff,

v.

**W.K. MARSHALL, Frank Young, and Other Unknown Defendants,** Defendants.

No. Civ.A. 2:99–0845.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 6, 2000.

John G. Hackney, Jr., Joseph C. Cometti, Charleston, WV, for plaintiff John Russell Krider.

Jeffrey K. Phillips, Michael D. Mullins, Steptoe and Johnson, Charleston, WV, for defendant W.K. Marshall.

Frank Young, defendant pro se.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant W.K. Marshall's motion for summary judgment. The Court **GRANTS** the motion and **DISMISSES** the case.

## I. FINDINGS OF FACT

On September 27, 1997 Trooper W.K. Marshall clocked Plaintiff John Russell Krider operating his vehicle at an excessive rate of speed.[1] He energized his lights and siren to stop Plaintiff. Plaintiff then quickly sped away.[2]

After fleeing for approximately one mile, Plaintiff drove over an embankment and into an overgrown field. Once he regained control, he drove through the field and hid behind a haystack. He successfully eluded Marshall for thirty (30) to forty (40) minutes before surrendering under the aimed service revolvers of Marshall and two back-up officers. Plaintiff exited the vehicle only after two orders from Marshall. Once Marshall was upon Plaintiff, he holstered his gun and began handcuffing Plaintiff. Plaintiff was facing his vehicle at the time, with his legs spread and his hands behind his back. During the handcuffing, Plaintiff alleges Marshall grabbed his wrists and shoved his arms up into the center of his back, pushing him chest first into his truck. Both parties agree the

---

1. The material facts are largely undisputed. Where the parties differ, it is noted. All facts are considered in a light most favorable to the Plaintiff, the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

2. Plaintiff does not assert the attempt to stop him was improper. He in fact pled "no contest" to speeding, fleeing a police officer, improper turn and failure to yield to an emergency vehicle.

incident concluded in two (2) to three (3) seconds.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for … discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo*

*Armored Service Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates Defendant's motion.

### B. Excessive Force

█ Plaintiff claims Marshall used excessive force. Such a claim is analyzed under the Fourth Amendment's prohibition against unreasonable searches and seizures. *Vathekan v. Prince George's County*, 154 F.3d 173, 177 (4th Cir.1998) (citing *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The issue is whether the force employed was "objectively reasonable" under all the circumstances.

█ "Determining whether the force used to carry out a particular arrest is unreasonable under the Fourth Amendment requires 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Garner*, 471 U.S. at 8, 105 S.Ct. 1694 (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)), *see also Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988). Each case is fact specific, *Garner*, 471 U.S. at 8–9, 105 S.Ct. 1694, but "due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing." *Garner*, 471 U.S. at 26, 105 S.Ct. 1694.

708

"The standard of 'reasonableness' under the Fourth Amendment is wholly objective; the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation." *Martin*, 849 F.2d at 869 (citing *Scott v. United States*, 436 U.S. 128, 137–38, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). In other words, the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

The "objective reasonableness" test requires courts give careful scrutiny to the totality of circumstances, including the severity of the crime, whether the suspect posed an immediate threat to safety, and whether he was actively resisting or attempting to evade arrest. *Id.* *Graham* also observes "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, amounts to a Fourth Amendment violation." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*

Considering the totality of the circumstances, Marshall's actions were not objectively unreasonable. Plaintiff evaded Marshall and other officers for more than thirty (30) minutes while recklessly operating his vehicle. His behavior suggested more serious criminal activity was afoot. Trooper Marshall could thus have objectively believed, as he professed, that Plaintiff was a then-fleeing felon wanted for assault and battery of a police officer as well as for several car thefts.[3] Marshall also had no guarantee Plaintiff was not armed.

Even with guns pointing his direction, Plaintiff disobeyed the first order to exit his car. Further, when Trooper Marshall began handcuffing Plaintiff, he had already holstered his revolver. Lacking his weapon, Marshall had no assurances Plaintiff would not attempt another "improvident move" prior to the cuffs being secured. (See Plaintiff's Resp. at 1: "[P]laintiff admits that his flight was, at the very least, an improvident move.") Under these circumstances, Marshall's actions were not "objectively unreasonable."

The Court also may consider the nature and seriousness of the injury. *Preast v. McGill*, 65 F.Supp.2d 395, 407 (S.D.W.Va.1999) (Hallanan, J.). "Generally, it has been held that a significant visible injury is required to support an excessive force claim." *Id.* (citing *Gaudreault v. Municipality of Salem, Mass*, 923 F.2d 203, 206 (1st Cir.1990)). There is an exception, however, to the "significant visible injury" requirement when the injury surfaces after an incident. For example, *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) affirmed a summary judgment denial where plaintiff limped away from a skirmish with police officers and later discovered torn ligaments.

Plaintiff here exhibited no signs of significant injury when the incident occurred and made no complaints to the officers about his alleged injuries. He now asserts his handcuffing, however, caused neck and back swelling, pain in his chest, and a stinging sensation in his arm. According to a report from a Dr. Guberman, Plaintiff experienced cervical strain and disc protrusions at C5–C6 and C6–C7. Both Plaintiff and Dr. Guberman allege his injuries are permanent. Plaintiff admits, however, no treating physician independently attributed his condition to the handcuffing. Moreover, Dr. Guberman failed to find to a reasonable degree of medical certainty the handcuffing caused Plaintiff's injury.

3. In actuality, Plaintiff was neither involved in a more serious crime nor a fleeing felon.

Although unfortunate, *the alleged injuries are insufficient to* support a reasonable inference Marshall used inordinate force in effectuating the arrest. The circumstances were "tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. There is simply no trialworthy issue on the excessive force claim. Accordingly, Marshall is entitled to judgment as a matter of law.

### C. Qualified Immunity

■ In the alternative, Marshall is also entitled to qualified immunity. "Questions of qualified immunity should not be placed in the hands of a jury, *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (emphasis added), [but should] rather ... be decided by the court[.]" *Preast,* 65 F.Supp.2d at 404. As reflected in *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994):

> "Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (*citations and footnote omitted*). 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.' *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992) (citing *Tarantino v. Baker,* 825 F.2d 772, 774–75 (4th Cir.1987), cert. denied, 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989)), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Tarantino,* 825 F.2d at 775."

*See Browning v. Snead,* 886 F.Supp. 547 (S.D.W.Va.1995) (Haden, C.J.); *Reynolds v. Hale,* 855 F.Supp. 147, 149 (S.D.W.Va. 1994) (Haden, C.J.).

The Court of Appeals has parsed out the qualified immunity analysis: "First, we must identify the right allegedly violated; second, we must decide whether the right was clearly established at the time of the alleged violation; and third, we must determine whether a reasonable person in the officer's position would have known his or her actions violated that right." *Gould v. Davis,* 165 F.3d 265, 269 (4th Cir.1998).

■ The right allegedly violated must be identified with a high level of particularity. *McDerment v. Browning,* 18 F.Supp.2d 622, 626 (S.D.W.Va.1998) (Haden, C.J.). After identifying the specific constitutional right, courts must then determine "whether the established contours of the [right] were sufficiently clear at the time of the attack to make it plain to reasonable officers that their actions under these particular circumstances violated [Plaintiff's] rights." *Vathekan,* 154 F.3d at 179 (citing *Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir.1997) (en banc)). *Vathekan* further explains: "A prior case holding identical conduct to be unlawful is not required. Specifically, the exact conduct at issue need *not have been held to be unlawful so long as the unlawfulness* of the conduct is manifest under existing authority." *Id.* (citing *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998)).

■ The test for determining whether qualified immunity is available for a particular defendant is again an "objectively reasonable" one. *Shaw v. Stroud,* 13 F.3d 791, 801 (4th Cir.1994). One seeking immunity prevails if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th

Cir.1991). *Shaw v. Stroud*, 13 F.3d at 801; *see Gooden v. Howard County, Maryland*, 954 F.2d 960, 965 (4th Cir.1992) ("[T]he basic purpose of qualified immunity ... is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment.") *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (qualified immunity necessary because 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.')

 The doctrine accords "police officers latitude in exercising what are inescapably discretionary functions replete with close judgment calls." *Gooden*, 954 F.2d at 964. The test is a "highly deferential" one *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir.1992), and "immunity is to be applied with due respect for the perspective of police officers on the scene and not with ... judicial hindsight." *Gooden*, 954 F.2d at 964–65.

 The right allegedly violated here is Plaintiff's right to be free from excessive force during an otherwise lawful seizure. More specifically, he claims a constitutional right not to have his arms pulled up and into his back and to be pushed onto his vehicle while *being handcuffed after he had inexplicably eluded police for more* than thirty (30) minutes. It is far from clear Plaintiff had such a right under the circumstances. Even possessed of the

right, however, it is not clear a reasonable officer would have understood that aggressively securing and handcuffing the Plaintiff would violate his constitutional rights under the circumstances. Even had Plaintiff thus stated a constitutional violation, Marshall *would enjoy qualified immunity*.

### D. Plaintiff's Property Damage Claim

Plaintiff also alleges Marshall is liable for damages to his truck occurring during towing. He asserts the towing company was Marshall's agent and that the latter is liable for its negligence. Alternatively, he asserts Marshall owed and breached a "duty of bailment." (Complaint ¶ 14.)

 *Unfortunately, Plaintiff has failed as a matter of law to (1)* prove an agency relationship, or (2) raise a duty of bailment. He fails to even address the issue in either his Response or Supplemental Response, nor does he direct the Court's attention to any deposition testimony indicating an agency relationship or a bailment duty. Mere allegations, of course, are insufficient to defeat summary judgment. *Gray v. Farley*, 13 F.3d 142, 145 (4th Cir.1993); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Blair v. Ravenswood Village Health Center*, 43 F.Supp.2d 586 (S.D.W.Va.1998). In light of Plaintiff's failure to offer more than mere allegations, summary judgment is proper.

Accordingly, the Courts **GRANTS** Marshall's motion for summary judgment and **ORDERS** this action **DISMISSED**[4] and stricken from the docket.

---

**4.** It does not appear Defendant Frank Young has been served. *Rule 4(m), Federal Rules of Civil Procedure*, provides:

> **(m) Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or *on its own initiative after notice to the plaintiff*, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified

time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. (*Emphasis supplied.*)

Assuming Krider could show good cause after notice of failure to make service on Young, the Court, after considering the factors outlined in *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir.1995), declines jurisdiction over that purely state law claim involving non-diverse parties. *See* 28 U.S.C. § 1367(c).

The Clerk is directed to (1) send a copy of this Memorandum Opinion and Order to counsel of record by facsimile and mail; and (2) publish the same on the Court's website at www.wvsd.uscourts.gov.

That claim will be **DISMISSED** without prejudice.